IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **DIANA BOND,** *Individually,* § <br> *as Representative/Heir of the* § <br> **ESTATE OF TAMI BOND;** and § <br> *as next friend for* **A.R.B.,** *a minor child* § <br> § <br> **v.** § <br> § <br> **NUECES COUNTY, TEXAS;** § <br> **ELIZABETH ALVARADO,** *Individually*; § <br> **JASMINE DRAKE,** *Individually*; § <br> **MICHAEL ALVAREZ,** *Individually*; § <br> **ANTHONY MUNOZ,** *Individually*; § <br> **JOSE RODRIGUEZ,** *Individually*; § <br> **LUIS RIVERA,** *Individually*; § <br> **JOSE AGUAYO,** *Individually*; and § <br> **CHRIS GOMEZ,** *Individually*; § <br> **WELLPATH, LLC.;** and § <br> **JACKIE BLEVINS,** *Individually*. § | **CIVIL ACTION NO. 2:19-cv-00043** <br> **JURY TRIAL** |

**PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

   **NOW COMES** Plaintiff, Diana Bond, *Individually, as Representative/Heir of the* Estate of Tami Bond, and *as next friend* for A.R.B., *a minor child*, filing this, her *Plaintiff's Second Amended Original Complaint*, and bringing this action against Nueces County, Texas, Elizabeth Alvarado, *Individually*, Jasmine Drake, I*ndividuall*y, Michael Alvarez, *Individually*, Anthony Munoz, *Individually*, Jose Rodriguez, *Individually*, Luis Rivera, *Individually*, Jose Aguayo, *Individually*, Chris Gomez, *Individually*, Wellpath LLC, and Jackie Blevins, *Individually*, as said Defendants, jointly and severally, have denied certain rights as guaranteed by the Constitution and laws of the United States of America.

## JURISDICTION AND VENUE

1. This court has jurisdiction over this action pursuant to, *inter alia*, 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343(3) (civil rights). Venue is proper in the Southern District of Texas, Corpus Christi Division, as this is the district where the claim arose in accordance to 29 U.S.C.§1391(b).

## PARTIES

2. Plaintiff Diana Bond, brings this suit on her own behalf, on behalf of the Estate of her daughter Tami Bond (hereinafter "Tami") and her daughter's minor child - ARB. Plaintiff is a resident of Nueces County, Texas.

3. Defendant Nueces County, Texas (hereinafter "Nueces County") is a political subdivision of the State of Texas, has previously waived service and made an appearance herein.

4. Defendant Elizabeth Alvarado (hereinafter "Alvarado") was, at all times material to this suit, an officer employed by the Nueces County Sheriff's Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of her employment and authority with the Nueces County Sheriff's Department. Defendant Alvarado may be served with summons at her place of employment, NUECES COUNTY SHERIFF'S DEPARTMENT, 901 Leopard St., Corpus Christi, Texas 78401.

5. Defendant Jasmine Drake (hereinafter "Drake") was, at all times material to this suit, an officer employed by the Nueces County Sheriff's Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of her employment and authority with the Nueces County Sheriff's Department. Defendant Drake may be served with summons at her place of employment, NUECES COUNTY SHERIFF'S DEPARTMENT, 901 Leopard St., Corpus Christi, Texas 78401.

6. Defendant Michael Alvarez (hereinafter "Alvarez") was, at all times material to this suit, an officer employed by the Nueces County Sheriff's Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the Nueces County Sheriff's Department. Defendant Alvarez may be served with summons at his place of employment, NUECES COUNTY SHERIFF'S DEPARTMENT, 901 Leopard St., Corpus Christi, Texas 78401.

7. Defendant Anthony Munoz (hereinafter "Munoz") was, at all times material to this suit, an officer employed by the Nueces County Sheriff's Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the Nueces County Sheriff's Department. Defendant Munoz may be served with summons at his place of employment, NUECES COUNTY SHERIFF'S DEPARTMENT, 901 Leopard St., Corpus Christi, Texas 78401.

8. Defendant Jose Rodriguez (hereinafter "Rodriguez") was, at all times material to this suit, an officer employed by the Nueces County Sheriff's Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the Nueces County Sheriff's Department. Defendant Rodriguez may be served with summons at his place of employment, NUECES COUNTY SHERIFF'S DEPARTMENT, 901 Leopard St., Corpus Christi, Texas 78401.

9. Defendant Luis Rivera (hereinafter "Rivera") was, at all times material to this suit, an officer employed by the Nueces County Sheriff's Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the Nueces County Sheriff's Department. Defendant Rivera may be served with summons at his place of employment, NUECES

County Sheriff's Department, 901 Leopard St., Corpus Christi, Texas 78401.

10. Defendant Jose Aguayo (hereinafter "Aguayo") was, at all times material to this suit, an officer employed by the Nueces County Sheriff's Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the Nueces County Sheriff's Department. Defendant Aguayo may be served with summons at his place of employment, Nueces County Sheriff's Department, 901 Leopard St., Corpus Christi, Texas 78401.

11. Defendant Chris Gomez (hereinafter "Gomez") was, at all times material to this suit, an officer employed by the Nueces County Sheriff's Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the Nueces County Sheriff's Department. Defendant Gomez may be served with summons at his place of employment, Nueces County Sheriff's Department, 901 Leopard St., Corpus Christi, Texas 78401.

12. Defendant Wellpath LLC (hereinafter "Wellpath") is a foreign limited liability company doing business in Texas and may be served with summons upon its registered agent, Corporate Creations Network, Inc., 2425 W. Loop South #200, Houston, Texas 77027.

13. Defendant Jackie Blevins (hereinafter "Blevins") was, at all times material to this suit, a nurse employed by Wellpath LLC (hereinafter Wellpath), the inmate medical provided of the Nueces County Sheriff's Department. Each of the acts complained of herein arises from the conduct of Defendant Blevins while acting under color of state law, and was committed within the scope of her employment with Wellpath. Defendant Blevins may be served with summons at 905 Delta Drive, Corpus Christi, Texas 78412.

**FACTS**

14.     Whenever, in this complaint it is alleged that any Defendant did any act, thing, and/or omission, it is meant that Defendant and/or Defendant's officers, agents, servants, employees or representatives did such act, thing and/or omission and that at the time it was done with full authorization and/or ratification of Defendant or done in the normal and routine course and scope of employment of Defendant and/or Defendant's officers, agents, servants, employees or representatives.

15.     On or about February 6, 2017, Tami was arrested, charged with possession of controlled substance and tampering with evidence, and was taken to the Nueces County Jail (hereinafter occasionally referred to as "the Jail"). During her initial introduction to the Jail, Tami was calm, focused, oriented and allegedly not otherwise exhibiting any medical concerns.  Soon thereafter things changed dramatically for Tami, who had swallowed two lethal-sized baggies of methamphetamine and/or amphetamines.

16.     By the time she was initially seen by Defendant Blevins, Tami was already being uncooperative, unable to follow verbal commands and/or sit as directed.  As a result, Tami was placed in a holding cell to "cool down" for a bit.  While Tami allegedly answered no to "all medical questions," she was obviously not acting in any way considered to be normal and her demeanor was only going to get worse.  At no time during her interaction with Tami did Blevins and/or other employees of Wellpath ever express any concern over Tami's increasingly-problematic conduct and/or condition.

17.     During the time Tami was in the first holding cell, she needed other inmates to wipe the sweat from her face, she lay on the floor and when she needed to get up or have help to the bathroom, she required assistance.  At some point and based on the actions of Tami (who was seen

grabbing unseen objects from the air), guards were sent into the holding cell to search for any narcotics. During such, it was apparent that Tami was not in her right state of mind and it was obvious that she was in distress, sweating and making absolutely no sense whatsoever.

18. Even after the search, Tami was seen clutching her stomach and head in pain, lying on the floor and being assisted again by their inmates to simply go to the bathroom. Based on such, Defendant Munoz asked Tami to step out from the cell so that booking (this had begun but not concluded due to Tami's increasingly worsening-condition and actions) could be continued. As he removed Tami from the cell, Defendant Munoz could easily see that Tami was "under the influence," was stumbling and had slurred speech. Defendant Drake knew also that Tami was disoriented and needed assistance. Despite such, neither Defendant Munoz or any other defendant took any actions to have Tami medically reassessed and/or take any action to have treated the obvious concerns with the possible overdose at hand.

19. After being returned to the first holding cell, Tami was again holding her stomach, searching the toilet paper and "smoking" an unknown and unseen object. Defendants then could see that Tami continued to pace, search the cell and tear toilet paper. At some point during this time, defendants had also seen other increasingly-strange behavior (including sitting on a pregnant woman's stomach and attempting to kiss other inmates) and as such, moved Tami to another holding cell (where problems continued) and then eventually to an "isolation cell" where Tami could be placed on a "15-minute watch" for problems. Despite the fact that defendants knew Tami was hallucinating and could not properly think, no such watch was conducted and no medical treatment was provided.

20. Thereafter, Tami – in full view of defendants (all of whom are/were responsible for the well-being of Tami and/or had contact with her during her stay) – continued with her erratic

behavior, eventually sliding off her bench and falling to the ground, twitching and mumbling and covered in sweat and urine until assistance actually arrives. During the entirety of Tami's stay in the Nueces County Jail, Tami and/or those assisting her repeatedly indicated and requested medical attention and/or concerns with her worsening medical condition. Defendants did not do so. At no time did Tami receive the medical attention requested, and as a result, Tami died in the early morning of February 7, 2017.

21. Defendants are aware that during each and every shift of every single day, that the possibility that someone (especially someone that is accused of tampering with evidence by ingestion) could very well have complications associated with the use/ingestion of same. The possibility that overdoses (leading to death or otherwise) will occur is without question and any jail should be training their employees/agents to observe signs of same, how to react to same and actually utilize medical technology at hand. Based on information and belief, Plaintiff would proffer that such "overdoses" are a regular event and that very often, medical (either internal or outside ambulance services) is called for persons suffering same. Even in the last few months, such occurrence has been repetitive and resulted in multiple persons being treated and/or hospitalized.

22. At all pertinent times, Defendant Nueces County, Texas (by and though the Nueces County Sheriff's Department) authorized and ratified the wrongful and tortuous acts and/or omissions of its officers/deputies/agents. In addition, each of the defendants (other than Wellpath and Blevins) were directly responsible for the oversight of Tami and her medical needs and were directly in communication (or were supervisors of same) with Tami at various times during Tami's stay in the Nueces County Jail.

**FIRST CLAIM FOR RELIEF - §1983**

23.     **Section 1983.** The Civil Rights Act of 1871 (originally the "Ku Klux Klan Act"), now codified as 42 U.S.C.S. §1983 as federal law provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C.S. §1983.

24.     The state action requirement for standing under 42 U.S.C.S. §1983 has more commonly been referred to as "color of state law," from the statute itself.  Plaintiff is informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

25.     42 U.S.C.S. §1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States.  As such, Plaintiff alleges that Defendants, jointly and/or severally deprived Tami of her Fourth Amendment rights and those rights, privileges, and immunities secured by the Fourth Amendment to the Constitution incorporated and applied to the states through the Fourteenth Amendment. Defendants violated this provision by the following actions, *inter alia*, and/or omissions:

   a)    by acting with deliberate indifference to a substantial and known risk of harm to Tami;

   b)    by failing to intervene, where such intervention would have prevented further injury, including Tami's death;

   c)    by ignoring Tami's serious medical needs; and

  d)  failing to impose proper and sufficient policies and/or procedures as to the screening of inmates/detainees/arrestees in regard to their medical needs and/or training concerning same.

26. **§ 1983 - County/Municipal liability.** It well-established that municipalities are liable under 42 U.S.C.S. §1983 for constitutional torts that are in-compliance with the municipality's customs, practices, policies or procedures. A municipality is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision-making channels. In this case, Nueces County is liable because it sanctioned the custom, practice and/or policy or procedure of failing to protect and/or ignoring the serious medical needs of those entrusted to their care. Defendants' actions and/or omissions were not "objectively reasonable" in light of the facts and circumstances confronting them without regard to their underlying intent or motivation. Clearly, careful attention to the facts and circumstances of this particular case illustrates the unreasonableness of Defendants' actions.

27. Defendants are liable herein because they sanctioned the custom, practice and/or policy or procedures of, *inter alia*, 1) ignoring the serious medical needs of those entrusted to its care based either on expedience or ignorance to the consequences, 2) failing to discipline those persons whom are found to have ignored the medical needs of such individuals, 3) failing to adequately supervise and/or observe its inmates/detainees/arrestees, 4) failing to provide adequate man power to supervise and/or observe inmates/detainees/arrestees, 5) failing to provide adequate staff to handle situations stemming from the medical needs of inmates/detainees/arrestees, 6) failing to impose proper and sufficient policies and/or procedures as to the screening of inmates/detainees/arrestees in regard to their medical needs, 7) failing to act in compliance with and failing to enforce the

policy (of Texas Jail Standards or otherwise) concerning proper cell checks and/or the importance of same, and 8) failing to act in compliance with and failing to enforce the policy (of Texas Jail Standards or otherwise) requiring visual "checks" every 15 minutes for persons in isolation and/or under medical review, 9) failing to train and/or discipline those employees whom are found to have violated any of the above-noted policies, and 10) failing to train and/or supervise concerning medical reassessments for inmates/detainees/arrestees who – even while initially may not have signs of obvious medical problems – begin to exhibit obvious signs of medical problems, including but not limited to, those stemming from the use of illicit drugs.

28.     The actions and/or inactions taken in this case were taken pursuant to the customary practices and/or policies or procedures that were sanctioned by Defendants.  Liability for Defendants is established under §1983 because its "ignore all policies" attitude is a persistent, widespread practice of the county employees -- namely deputies/officers/agents -- that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official policy.  Defendants had actual or constructive knowledge of each practice, custom, and/or policy or procedure and numerous prior incidents of such conduct and/or inaction as to establish accession to that custom by the policy makers.  Defendants' unspoken policies above is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.  In the alternative, Defendants are liable under §1983 for failing to adopt clear policies outlining the criteria for determining, relaying and/or treating the medical needs and/or reassessing the medical needs of inmates/detainees/arrestees.

## ADMINISTRATION OF ESTATE UNNECESSARY

29. As to the Estate of Tami, Plaintiffs hereby plead as follows:

   a) At the time of her death, Tami was not married;
   b) That the Estate had no debts and/or fewer than two debts;
   b) That Tami died intestate;
   c) That no administration is pending;
   d) That no administration was necessary;
   e) That no administration was desired by any interested party in the Estate;
   f) That Tami died without owning any real property; and
   g) That all interested parties entered into an agreement between themselves concerning the distribution of any estate property.

30. Based on such, the administration of the Estate of Tami Bond was and is not necessary.

## DAMAGES

31. As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, Diana Bond has been caused to suffer general damages which include but are not limited to the following: both physical and emotional injury, including but not limited to pain and suffering, emotional and mental distress, and personal humiliation and shock, along with severe emotional distress.

32. Said injuries have caused Diana Bond to incur special damages which include, but are not limited to: funeral/burial expenses, and the loss of companionship and/or support.

33. Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C.S. §1988, a prevailing party in a §1983 case is entitled to recover his attorney's fees. Hence, Plaintiff further prays for all costs and attorney fees associated with bringing the present case to trial.

34. In addition, Plaintiff prays for punitive damages against all individual Defendants. Punitive damages are designed to punish and deter persons such as Defendants who have engaged in egregious wrongdoing. Punitive damages may be assessed under §1983 when a Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

11

indifference to the federally-protected rights of others.  While municipal defendants are absolutely immune from §1983 awards of punitive damages, such damages may be awarded against a public employee or official in their individual capacity.  Therefore, Plaintiff alleges and prays for punitive damages against all individual Defendants, as such Defendants knew that their conduct was unconstitutional, and/or was callously indifferent to its legality.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays that upon trial of the merits, she recover compensatory damages against Defendants, jointly and severally; that Plaintiff also recover punitive damages against the individual Defendants in an amount to punish and/or deter and to make an example of those Defendants in order to prevent similar future conduct; and, that Diana Bond recover against each Defendant all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation.  Moreover, Plaintiff prays for all pre-judgement and post-judgement interest that can be assessed against the Defendants in the event of recovery; and that Plaintiff recover against each Defendant any and all other general or specific relief to which she proves herself justly entitled.

    Respectfully submitted,

    **GALE LAW GROUP, PLLC**
    711 N. Carancahua St., Suite 514
    Corpus Christi, Texas 78401
    Mailing Address:
    P.O. Box 2591
    Corpus Christi, Texas 78403
    Telephone: (361)808-4444
    Telecopier: (361)232-4139

    By: */s/ Christopher J. Gale*
    Christopher J. Gale
    Texas Bar No. 00793766
    Southern District Bar No. 27257
    Chris@GaleLawGroup.com
    *Attorney-in-Charge for Plaintiff*

/s/ *Amie Augenstein*
Amie Augenstein
Texas Bar No. 24085184
Southern District Bar No. 2236723
Amie@GaleLawGroup.com
*Attorney for Plaintiff*

**Demand for Jury Trial**

Plaintiff hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

**NOTICE OF ELECTRONIC FILING**

The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Southern District of Texas on the 1st day of July, 2019.

/s/ *Christopher J. Gale*
Christopher J. Gale

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 1st day of July, 2019, the above and foregoing was sent to the following counsel of record by the means indicated below:

**Jenny Cron**                                    *Via E-Mail and E-File Notification*
jenny.cron@nuecesco.com
**Laura Jimenez**
laura.jimenez@nuecesco.com
NUECES COUNTY ATTORNEY
901 Leopard St., Room 207
Corpus Christi, Texas 78401

/s/ *Christopher J. Gale*
Christopher J. Gale