United States District Court
Southern District of Texas
**ENTERED**
September 05, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DIANA BOND, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-43 |
| | § | |
| NUECES COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING MOTION TO DISMISS

In this civil rights action brought under 42 U.S.C. § 1983, Plaintiff Diana Bond claims that Nueces County employees denied adequate medical attention to Plaintiff's daughter, Tami Bond ("Bond"), who died while detained at the Nueces County Jail. (D.E. 29). Before the Court is Defendants' Supplemental Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 33). The Motion to Dismiss was filed by Nueces County, Texas ("Nueces County"), Elizabeth Alvarado, Jasmine Drake, Michael Alvarez, Anthony Munoz, Jose Rodriguez, Luis Rivera, Jose Aguayo, and Chris Gomez (together "Individual County Defendants"). For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**. Plaintiff may file for leave to amend **on or before September 19, 2019**.

### I.      Procedural Background

On February 5, 2019, Plaintiff filed her Original Complaint alleging that Defendants did not provide adequate medical care to treat Plaintiff's serious medical needs in violation

of her constitutional rights.[1] (D.E. 1). She named as Defendants: (1) Nueces County, Texas; (2) two John Doe defendants; and (3) two Jane Doe defendants. (D.E. 1). On February 11, 2019, Plaintiff filed her First Amended Complaint naming the same defendants. (D.E. 3).

On April 22, 2019, Nueces County filed a 12(b)(6) Motion to Dismiss. (D.E. 10). The Plaintiff responded on May 28, 2019, (D.E. 17), and Nueces County replied on June 4, 2019. (D.E. 21). In Plaintiff's response, she requested leave to amend, which the Court granted on June 12, 2019. (D.E. 22).

On July 1, 2019, Plaintiff filed her Second Amended Complaint ("the Complaint"), naming as defendants: (1) Nueces County, Texas; (2) Elizabeth Alvarado; (3) Jasmine Drake; (4) Michael Alvarez; (5) Anthony Munoz; (6) Jose Rodriguez; (7) Luis Rivera; (8) Jose Aguayo; (9) Chris Gomez; (10) Wellpath, LLC; and (11) Jackie Blevins. (D.E. 29). On July 12, 2019, Defendants filed a Supplemental 12(b)(6) Motion to Dismiss. (D.E. 33). Plaintiff filed her Response to the Supplemental Motion to Dismiss on August 7, 2019. (D.E. 39).

## II.    Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. The district court, however, must construe the complaint in a light most favorable to the plaintiff, and the allegations contained therein must be taken as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). To survive a motion

---

[1] Plaintiff also initially brought a claim under the Americans with Disabilities Act, but she did not include an ADA claim in her Second Amended Complaint.

to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face" and must plead those facts with enough specificity "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, a complaint will not be dismissed merely because it contains an "imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam) (citations omitted).

### III.   Plaintiff's Allegations

The following allegations were made in Plaintiff's Second Amended Complaint and are taken as true for the purposes of a 12(b)(6) motion to dismiss. *Katrina Canal Breaches*, 495 F.3d at 205.

On February 6, 2017, Tami Bond was arrested, charged with possession of a controlled substance and tampering with evidence, and placed in the Nueces County Jail. (D.E. 29, ¶ 15). During intake, Bond was calm, focused, and oriented. (D.E. 29, ¶ 15). Soon thereafter, however, Bond became uncooperative because she had swallowed two lethal-sized baggies of methamphetamine or amphetamines. (D.E. 29, ¶ 15). When the medical personnel provided by Nueces County Sheriff's Department asked about any medical concerns, Bond answered "no" to all questions. (D.E. 29, ¶ 16). However, Bond was unable

to follow verbal commands, and she was placed in a holding cell until she could sufficiently cooperate and finish the booking process. (D.E. 29, ¶ 16).

During Bond's time in holding, she required help from other inmates to use the bathroom and get up from the floor, and she was seen grabbing unseen objects from the air. (D.E. 29, ¶ 17). Because of Bond's behavior, guards were sent into the cell to search for narcotics. (D.E. 29, ¶ 17). After the search, Bond was seen acting as if she was in pain and continued to require assistance from other inmates. (D.E. 29, ¶ 18). Defendants saw she was stumbling, had slurred speech, and needed assistance, and when Defendants again tried to complete Bond's booking, they were unable to because of her behavior. (D.E. 29, ¶ 18). Both Bond and other inmates sought further medical attention for her. (D.E. 29, ¶ 20). Despite Bond's behavior and requests for help, Defendants took no action to have Bond medically reassessed. (D.E. 29, ¶ 18).

Defendants eventually moved Bond to another cell—and then to an isolation cell—because of erratic behavior, such as sitting on a pregnant woman and hallucinating. (D.E. 29, ¶ 19). Though she was placed in isolation and was supposed to be checked on every fifteen minutes, jail personnel neither monitored Bond nor provided medical treatment. (D.E. 29, ¶ 19). Bond died from an overdose the following morning. (D.E. 29, ¶ 20). Plaintiff alleges that Defendants' failure to provide adequate medical attention to Bond's serious medical condition resulted in Bond's death. (D.E. 29, ¶ 20).

Based on these factual allegations, Plaintiff brings suit under 42 U.S.C. § 1983 against Nueces County, eight individual county employees, Wellpath, LLC (the jail medical provider), and Wellpath's employee, Blevins. (D.E. 29). Plaintiff alleges that

Defendants violated Bond's Fourth Amendment rights "by acting with deliberate indifference to a substantial and known risk of harm" to Bond, "failing to intervene, where such intervention would have prevented further injury, including [Bond]'s death," ignoring Bond's "serious medical needs," and "failing to impose proper and sufficient policies and/or procedures as to the screening of inmates/detainees/arrestees in regard to their medical needs and/or training concerning same." (D.E. 29, ¶ 25). Plaintiff advances her theory of municipal liability by asserting ten customs or persistent practices that Plaintiff alleges have become Nueces County policy. (D.E. 29, ¶ 27). The allegations include that Nueces County does not properly supervise detainees and ignores their serious medical needs, does not provide adequate staff or discipline employees who violate procedures, does not comply with standards concerning proper cell checks, and does not have proper policies and procedures for screening or reassessing the medical needs of detainees. (D.E. 29, ¶ 27).

Nueces County moves to dismiss Plaintiff's claims asserting Plaintiff has failed to state any plausible claim for governmental liability. (D.E. 33). The Individual County Defendants move to dismiss claiming the suit against them is barred by the statute of limitations. (D.E. 33).

## IV.    Section 1983 & Municipal Liability

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A municipality will be liable for the

constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish municipal liability, a plaintiff must identify three elements: (1) an official policy or custom (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citation omitted). Together, these three elements "distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). A "facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id.* at 579 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

Plaintiff does not allege that Nueces County is liable because of an official policy but alleges ten customary practices that Plaintiff claims have become policy. Defendants argue that Plaintiff did not plead sufficient factual content to show a custom or practice of failing to protect or provide adequate medical care. In response, Plaintiff challenges the pleading standard, stating that the Fifth Circuit "blatantly ignore[s]" the proper pleading standard for a section 1983 municipal claim. (D.E. 39, p. 7). Specifically, Plaintiff pleads that "generic and boilerplate" assertions are sufficient at this stage.[2] (D.E. 39, p. 11).

---

[2] Plaintiff relies on *Gearin v. Rabbett*, No. 10-CV-2227 (PJS/AJB), 2011 WL 317728, at *9 (D. Minn. Jan. 28, 2011); *Charles v. Galliano*, No. 10-811, 2010 WL 3430519, at *6 (E.D. La. Aug. 26, 2010); *Abdulkhalik v. City of San Diego*, No. 08CV1515-MMA(NLS), 2009 WL 4282004, at

### A. *Leatherman* Does Not Eliminate *Twombly & Iqbal* in Section 1983 Cases

The Supreme Court in *Leatherman* made it clear that the pleading of a section 1983 claim is not governed by Rule 9 the Federal Rules of Civil Procedure, but by Rule 8, which at the time was treated as a notice pleading standard. *Leatherman v. Tarrant Cty. Narcotics Intelligence Coordination Unit*, 507 U.S. 163, 164, 168 (1993). The Court agrees with Plaintiff that the main point of *Leatherman* survived *Twombly* in that section 1983 pleadings are evaluated under Rule 8(a). But *Twombly* announced new law that altered the interpretation of Rule 8(a), and that new interpretation applies to every case going forward that would have previously permitted formulaic pleadings. *Twombly*, 550 U.S. 544; *see, e.g., Evans v. City of Meridian*, 630 F. App'x 312, 315 (5th Cir. 2015) (per curiam) (applying *Twombly & Iqbal* to a municipal section 1983 claim without mentioning *Leatherman*); *Hatcher ex rel. T.H. v. Nueces Cty.*, No. 2:17-CV-155, 2017 WL 2985639, at *2 (S.D. Tex. July 13, 2017) (applying *Twombly & Iqbal* to municipal section 1983 claims); *Gonzales v. Nueces Cty.*, 227 F. Supp. 3d 698, 701 (S.D. Tex. 2017) (same); *Flanagan v. City of Dall.*, 48 F. Supp. 3d 941, 950–51 (N.D. Tex. 2014) (same); *White v. City of Dall.*, No. 3:12-cv-2145-0(BH), 2013 WL 821992, at *4 (N.D. Tex. Feb. 8, 2013) (same); *Wright v. City of Dall.*, No. 3:09-cv-1923-B, 2010 WL 3290995, at *2–4 (N.D. Tex. July 19, 2010) (same). This Court does not hold Plaintiff to a Rule 9(b) or a summary judgment standard. Rather, this Court holds Plaintiff to the pleading standards set forth under Rule 8, *Twombly*, *Iqbal*, and *Leatherman*.

---

*10 (S.D. Cal. Nov. 25, 2009); and *Dwyer v. City of Corinth*, No. 4:09-CV-198, 2009 WL 3856989, at *9 (E.D. Tex. Nov. 17, 2009).

### B.   Official Policy or Custom

The first element of a municipal liability claim under section 1983 requires Plaintiff to adequately plead an official policy or custom. *Peterson*, 588 F.3d at 847. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010) (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). A custom is "a persistent, widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (citing *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)). To establish a custom, a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Id.* at 582 (citing *Brown*, 520 U.S. at 410–11). Prior incidents "cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required." *McCully v. City of N. Richland Hills (In re Estate of Davis)*, 406 F.3d 375, 383 (5th Cir. 2005) (footnote omitted); *see also Oporto v. City of El Paso*, No. EP-10-CV-110-KC, 2010 WL 3503457, at *6 (W.D. Tex. Sept. 2, 2010) (holding that to survive a motion to dismiss on an unconstitutional unwritten policy or customary-practice claim, a plaintiff must plead sufficient facts to "allow the court to draw the reasonable inference that [the municipality has] engaged in a pattern of misconduct").

Plaintiff alleges that the following customary policies caused the violations of constitutional rights and form the basis of the Defendants' liability under section 1983:

> (1) ignoring the serious medical needs of those entrusted to its care based either on expedience or ignorance to the consequences, (2) failing to discipline those persons [who] are found to have ignored the medical needs of such individuals, (3) failing to adequately supervise and/or observe its inmates/detainees/arrestees, (4) failing to provide adequate manpower to supervise and/or observe inmates/detainees/arrestees, (5) failing to provide adequate staff to handle situations stemming from the medical needs of inmates/detainees/arrestees, (6) failing to impose proper and sufficient policies and/or procedures as to the screening of inmates/detainees/arrestees in regard to their medical needs, (7) failing to act in compliance with and failing to enforce the policy (of Texas Jail Standards or otherwise) concerning proper cell checks and/or the importance of same, and (8) failing to act in compliance with and failing to enforce the policy (of Texas Jail Standards or otherwise) requiring visual "checks" every 15 minutes for persons in isolation and/or under medical review, (9) failing to train and/or discipline those employees whom are found to have violated any of the above-noted policies, and (10) failing to train and/or supervise concerning medical reassessments for inmates/detainees/arrestees who – even while initially may not have signs of obvious medical problems – begin to exhibit obvious signs of medical problems, including but not limited to, those stemming from the use of illicit drugs.

(D.E. 29, ¶ 27).

Plaintiff's allegations one through five, seven, and eight are those of customary policies, while allegations six, nine, and ten pertain to failure to train and are addressed separately. [3] Defendants move to dismiss asserting that Plaintiff did not establish the existence of an unconstitutional policy or custom by Nueces County. The Court addresses

---

[3] Plaintiff also alleges that "[a]t all pertinent times, Defendant Nueces County, Texas (by and through the Nueces County Sheriff's Department) authorized and ratified the wrongful and tortuous acts and/or omissions of its officers/deputies/agents." (D.E. 29, ¶ 22). Neither side briefed the issue of ratification, but "[Fifth Circuit] precedent has limited the theory of ratification to 'extreme factual situations.'" *Peterson*, 588 F.3d at 848 (citing *Snyder v. Trepagnier*, 142 F.3d 791,798 (5th Cir. 1998)). Plaintiff alleges no facts to support a ratification claim beyond this conclusory statement.

each customary policy allegation below, focusing solely on the issue of governmental liability.

     *i.     <u>Alleged Customs One, Three, Seven and Eight</u>*

Plaintiff alleges that Nueces County ignores the serious medical needs of those entrusted to its care based either on expedience or ignorance of the consequences and that the County does not adequately supervise and observe its inmates, detainees, or arrestees. (D.E. 29, ¶ 27). Plaintiff also alleges that Defendants do not comply with or enforce policies (of the Texas Jail Standards,[4] or otherwise) concerning proper cell checks, specifically for persons in isolation or under medical review. (D.E. 29, ¶ 27).

All of Plaintiff's alleged facts on these allegations deal exclusively with Bond. No other instances involving other inmates, detainees, or arrestees are alleged. But a pattern "requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson*, 588 F.3d at 850.

> If actions of [municipal] employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [municipal] employees.

*Webster*, 735 F.2d at 842; *see Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) ("[I]solated unconstitutional actions by municipal employees will almost never trigger liability" (citing *Piotrowski*, 237 F.3d at 578)).[5]

---

[4] Plaintiff does not state which chapter of the Texas Jail Standards she is referring to, but the Texas Jail Standards are found in Title 37, Part 9, of the Texas Administrative Code.

[5] The Court notes that the posture of this case is distinguishable from much of the Fifth Circuit case law on establishing a pattern. Discovery has not usually begun at the motion to dismiss stage, unlike in *Peterson*, *Rivera*, and *Webster*, which were at the summary judgment or jury stage. Those

Persuasive here are rulings from other federal district courts where claims of an unconstitutional policy or custom against a municipality were dismissed. *See Hatcher*, 2017 WL 2985639, at *3–4 (finding insufficient facts to infer a policy or custom for failure to provide adequate medical treatment in part because plaintiff did not plead a pattern of denial of medical care); *Gonzales*, 227 F. Supp. 3d at 705 (dismissing claims against a county because lists of internal investigations were devoid of facts showing any similarity); *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 753 (S.D. Tex. 2016) (dismissing claims against a city because alleging only three isolated incidents was insufficient to plead a custom or practice); *Moreno v. City of Dall.*, No. 3:13-cv-4106-B, 2015 WL 3890467, at *9 (N.D. Tex. June 18, 2015) (dismissing claims against a city because eight prior incidents over five years did not establish a pattern).

Holdings where the plaintiff was found to have met the pleading standard are also instructive. *See, e.g.*, *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 536–37 (W.D. Tex. 2017) (finding a sufficient pattern of excessive force against persons with mental illness when nine similar incidents were alleged and statistics suggested that the city's proportion of individuals killed by police who had visible mental health issues were double and quadruple the national average); *Flanagan*, 48 F. Supp. 3d at 952–54 (finding a "close call" that plaintiffs had pled sufficient facts in alleging that a police department had a policy to

---

cases discussed the need for evidence beyond a bare list of prior incidents. *See Peterson*, 588 F.3d at 850; *Rivera*, 349 F.3d at 247; *Webster*, 735 F.2d at 842. In contrast, here at the motion to dismiss stage, the Court "must only evaluate whether Plaintiff has pled sufficient facts that would allow it to draw the reasonable inference that Defendants are liable for the alleged misconduct." *Ramirez v. Jim Wells Cty.*, No. CC-09-CV209, 2010 WL 2598304, at *2 (S.D. Tex. June 25, 2010).

shoot first and ask questions later after the city acknowledged training issues existed and numerous statistics showed high levels of a variety of misconduct compared to the national averages); *Oporto*, 2010 WL 3503457, at *6 (finding allegations of thirty-two prior incidents of deadly force spanning fifteen years sufficient to infer a custom or practice).

In the case at hand, Plaintiff does not even allege a bare list of prior incidents. Though she must allege a pattern with "similarity and specificity," *Peterson*, 588 F.3d at 851, Plaintiff fails to allege any other instances where Nueces County allegedly ignored the serious medical needs of someone entrusted to its care, let alone similar or specific instances. The Complaint is devoid of any facts suggesting a persistent practice existed as to these four alleged policies.

Plaintiff alleges:

> The actions and/or inactions taken in this case were taken pursuant to the customary practices and/or policies or procedures that were sanctioned by Defendants. Liability for Defendants is established under §1983 because its "ignore all policies" attitude is a persistent, widespread practice of the county employees—namely deputies/officers/agents—that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official policy. Defendants had actual or constructive knowledge of each practice, custom, and/or policy or procedure and numerous prior incidents of such conduct and/or inaction as to establish accession to that custom by the policy makers. Defendants' unspoken policies above is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.

(D.E. 29, ¶ 28).

These allegations are almost verbatim quotes from the elements of municipal liability and are too conclusory and general to assert an actionable claim. *See Spiller v. City of Tex. City, Police Dept.,* 130 F.3d 162, 167 (5th Cir. 1997) ("[The] assertion that [the

municipality] is liable because '[defendant] was acting in compliance with the municipality's customs, practices or procedures' is insufficient because it is conclusory."). "It is the conclusory nature of respondent's allegations . . . that disentitles them to the presumption of truth." *Iqbal*, 556 U.S. at 681.

Plaintiff points to *Balle v. Nueces County*, where the Fifth Circuit found a pattern was sufficiently pled. 690 F. App'x 847, 850–53 (5th Cir. 2017) (finding the complaint asserted a pattern when jail personnel did not provide Balle with "even minimally adequate medical care for his acute and emergency needs and made little effort to transfer him to a hospital, despite his numerous complaints that he was experiencing a medical emergency."). *Balle* is distinguishable from this. The plaintiff in *Balle* was detained for six days and subject to mistreatment on several days across several shifts of employees. *See id.* at 848. By contrast, Bond was detained for one night in Nueces County Jail. As such, this Court relies on the numerous published Fifth Circuit precedents requiring plaintiffs to allege a pattern of mistreatment to sufficiently show a policy. *See Peterson*, 588 F.3d at 850; *Rivera*, 349 F.3d at 247; *Webster*, 735 F.2d at 842. Accordingly, Plaintiff's amended pleadings are insufficient to allege a pattern of similar abuses.

*ii.* *Alleged Customs Two, Four and Five*

Plaintiff alleges that Nueces County does not discipline employees who ignore the medical needs of individuals entrusted to its care, but Plaintiff offers no facts to support this allegation. Plaintiff also alleges Nueces County is liable for failing to provide adequate manpower to supervise and observe inmates, detainees, and arrestees and failing to provide adequate staff to handle situations stemming from the medical needs of those individuals.

Again, the Complaint is entirely devoid of facts to support these conclusory allegations for either Bond's case or to establish a pattern. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations to be entitled to the assumption of truth." *Id.* at 679. As such, these customs are likewise insufficiently pled.

  iii.  <u>*Alleged Customs Six, Nine, and Ten: Failure to Train*</u>

  The failure to train municipal employees may also constitute a "policy," but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Plaintiff's allegations six, nine, and ten assert that Nueces County is liable for failure to train. Defendants move to dismiss, arguing that Plaintiff pled insufficient factual content to show a failure to train. (D.E. 33, p. 9–10). Plaintiff's response did not address the argument. However, the Court has reviewed the merits of this claim.

  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). To establish liability for failure to train, a plaintiff must show that: "(1) the municipality's training policy or procedure was inadequate, (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle*, 613 F.3d at 544 (citation omitted). "Moreover, 'for liability to attach based on an inadequate training" claim, a plaintiff must allege with specificity how a particular training program

is defective.'" *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). To show a municipality's deliberate indifference, the plaintiff is required to demonstrate a municipality had "notice of a pattern of similar violations." *McCully*, 406 F.3d at 383.

Plaintiff alleges that Nueces County failed "to train and/or discipline those employees [who] are found to have violated any of the above-noted policies." (D.E. 29, ¶ 27). The Complaint contains no other information related to this alleged custom and is therefore insufficient and shall be dismissed.

Plaintiff also pled two customary policies of:

> failing to impose proper and sufficient policies and/or procedures as to the screening of inmates/detainees/arrestees in regard to their medical needs . . and [] failing to train and/or supervise concerning medical reassessments for inmates/detainees/arrestees who—even while initially may not have signs of obvious medical problems—begin to exhibit obvious signs of medical problems, including but not limited to, those stemming from the use of illicit drugs.

(D.E. 29, ¶ 27). The alleged facts supporting these policies are those surrounding Bond's time in jail, which would be sufficient if analyzing the Individual County Defendants' liability. For governmental liability, more facts are needed to establish a persistent, wide-spread practice of failing to protect or provide adequate medical care. *See Piotrowski*, 237 F.3d at 579. To that point, Plaintiff alleges:

> Defendants are aware that during each and every shift of every single day, that the possibility that someone (especially someone that is accused of tampering with evidence by ingestion) could very well have complications associated with the use/ingestion of same. The possibility that overdoses (leading to death or otherwise) will occur is without question and any jail should be training their employees/agents to observe signs of same, how to react to same and actually utilize medical technology at hand. Based on

information and belief, Plaintiff would proffer that such "overdoses" are a regular event and that very often, medical (either internal or outside ambulance services) is called for persons suffering same. Even in the last few months, such occurrence has been repetitive and resulted in multiple persons being treated and/or hospitalized.

(D.E. 29, ¶ 21).

Taken as true, Defendants knew of regular overdoses that very often required medical services by their detainees. Plaintiff fails to allege anything further that could meet the elements for failure to train. Plaintiff does not allege that Nueces County had notice "of a pattern of similar violations" to show Bond's death was a "plainly obvious consequence" of the decision not to provide her medical care. *See Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000). Plaintiff alleged that overdoses requiring medical attention are a pattern, but she did not allege a pattern of Nueces County failing to provide medical care during those overdoses. In fact, Plaintiff seems to allege the opposite—that medical care *is* being provided—in that such occurrences have "been repetitive and resulted in multiple persons being treated and/or hospitalized." (D.E. 29, ¶ 21).

Plaintiff did not plead any prior incidents allowing the Court to draw the reasonable inference that Nueces County was deliberately indifferent to constitutional violations like those Bond suffered. *See Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff did not plead sufficient facts to hurdle the deliberate indifference element. Because Plaintiff fails to factually plead deliberate indifference, she has not met the pleading standard as to any of the failure to train elements.

After considering all ten "policies" Plaintiff put forth, the Court concludes that none are sufficient to establish that Nueces County maintained a wide-spread custom or policy

that caused Bond's death. Because the Court finds Plaintiff's claim fails on element one of municipal liability—an official policy or custom—there is no need to consider the other two elements: policy maker and moving force. Without an official policy or custom, Plaintiff's section 1983 claim against Nueces County must be dismissed. The Court notes that Plaintiff made compelling and detailed allegations against at least some of the individual officers. But alleging liability against Nueces County is beyond the inferences afforded this Complaint.

### V.      Statute of Limitations & the Individual Defendants

Defendants argue that Rule 15 does not allow Plaintiff to add named defendants in for the Doe defendants after the limitations period. (D.E. 33, p. 11–12). The statute of limitations for a section 1983 claim "is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski*, 237 F.3d at 576 (citing *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993)). Texas's statute of limitations for personal injury actions is two years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.003; *Piotrowski*, 237 F.3d at 576. The cause of action for injury resulting in death accrues on the death of the injured person, in this case February 7, 2017. TEX. CIV. PRAC. & REM. CODE § 16.003(b). As such, limitations ran on February 7, 2019.

Plaintiff's Original Complaint was filed on February 5, 2019. (D.E. 1). Her Second Amended Complaint, which substituted names of individual defendants for John and Jane Doe, was filed on July 1, 2019. (D.E. 29). However, changing the parties' names from "Doe" to named individuals does not relate back to the date of the Original Complaint filed

within the limitations period. Accordingly, as discussed below, these claims must be dismissed as barred by limitations.

### A.   Applicable Law

Federal Rule of Civil Procedure 15(c)(1) allows for an amendment to a complaint to relate back to the date of the original complaint if certain conditions are met.

> An amendment to a pleading relates back to the date of the original pleading when:
> - (A)  the law that provides the applicable statute of limitations allows relation back;
> - (B)  the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading; or
> - (C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>     - i.    received such notice of the action that it will not be prejudiced in defending on the merits; and
>     - ii.   knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity.*

FED. R. CIV. P. 15(c)(1) (emphasis added).

In *Jacobsen v. Osborne*, the Fifth Circuit held that an attempted substitution for a "John Doe" defendant does not relate back to the date of the original complaint for limitations purposes. 133 F.3d 315, 320–21 (5th Cir. 1998). Rule 15(c) requires a "'mistake concerning the identity of the proper party' and our Circuit held that "use of a John Doe moniker does not constitute a 'mistake.'" *Whitt v. Stephens Cty.*, 529 F.3d 278, 282–83 (5th Cir. 2008) (denying leave to amend after the limitations period because naming Doe

defendants is not a mistake and did not relate back (quoting *Jacobsen*, 133 F.3d at 321–22)).

In some circumstances, a court may preserve a claim that is otherwise untimely under the doctrine of equitable tolling. "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (citation omitted). "Traditional equitable principles preclude a court from invoking equitable tolling, however, when the party seeking relief has an adequate legal or statutory remedy to avoid the consequences of the statute of limitations." *Id.* at 299 (citations omitted).

## B.   Analysis

Plaintiff does not dispute that both *Balle*, 690 F. App'x 847, and *Jacobsen*, 133 F.3d 315, hold that substituting for "John Doe" defendants does not relate back for limitations periods. Instead, Plaintiff argues that the Fifth Circuit's caselaw is incorrect on this matter and ostensibly urges the Court to follow other circuit courts. (D.E. 39, p. 3–4). To be sure, Fifth Circuit caselaw is binding upon this Court. Plaintiff substituted named individuals for "John Doe" and "Jane Doe" in her Second Amended Complaint— over six months after the limitations period expired. (D.E. 29). That substitution does not relate back to the date of her original complaint. *See Jacobsen*, 133 F.3d at 321–322. Therefore, the claims against the substituted individual defendants are time-barred.

Additionally, equitable tolling does not apply. Because the Texas statute of limitations is borrowed in section 1983 cases, "Texas's equitable tolling principles control this litigation." *Myers v. Nash,* 464 F. App'x 348, 349 (5th Cir.2012) (per curiam) (citing

*Rotella v. Pederson,* 144 F.3d 892, 897 (5th Cir.1998)). "Texas courts sparingly apply equitable tolling and look, *inter alia,* to whether a plaintiff diligently pursued his rights; litigants may not use the doctrine to avoid the consequences of their own negligence. Federal courts also apply the doctrine sparingly." *Id.* at 349 (citations and internal quotation marks omitted).

The Fifth Circuit has spoken on this issue. In *Balle,* the court found that the delay in determining identities of "Doe" defendants did not warrant equitable tolling. 690 F. App'x at 851. In contrast, in *Green v. Doe,* the Fifth Circuit instructed that equitable tolling was appropriate "because the delay in determining the identity of 'John Doe' [was] not attributable to" the plaintiff's actions. 260 F. App'x 717, 719 (5th Cir. 2007) (per curiam) (emphasizing that the plaintiff had filed motions for discovery twice before limitations expired, which the district court denied). The Fifth Circuit in *Green* was careful to distinguish the case from *Jacobsen,* noting that Green had filed his lawsuit "almost eleven months before the running of the statute." *Green,* 260 F. App'x at 719. In contrast, the *Jacobsen* and *Balle* plaintiffs filed the suit just a few days before the limitations period had run, and the Fifth Circuit instructs that "there was no justification for equitable tolling" in those cases. *Id.* (citing *Jacobsen,* 133 F.3d at 321); *Balle,* 690 F. App'x at 851.

The Court finds equitable tolling is not applicable here. Plaintiff's inability to timely determine the identities of the "Doe" defendants was attributable to her own decision to file this suit two days before the end of the limitations period. By choosing to file that close to the deadline, Plaintiff failed to utilize the discovery mechanisms of the Federal Rules of Civil Procedure. Plaintiff states she "attempted—prior to hiring counsel—to determine the

identity of the employees at issue to no avail." (D.E. 39, p. 6). No further facts were alleged about this attempt. Because the court's discovery mechanisms are a legal remedy available to Plaintiff and she did not utilize them by filing so close to the end of the limitations period, the Court cannot conclude that Plaintiff "diligently pursued [her] rights" and does not find that equitable tolling is appropriate. *Myers*, 464 F. App'x at 349; *see also Lambert*, 44 F.3d at 299.

As such, all claims against Individual County Defendants Elizabeth Alvarado, Jasmine Drake, Michael Alvarez, Anthony Munoz, Jose Rodriguez, Luis Rivera, Jose Aguayo, and Chris Gomez are untimely and are dismissed.

## VI.  Leave to Amend

Plaintiff included in her response a request for leave to amend should the Court find her pleading deficient. The Court notes that this Order is not dispositive of the entire case because claims against Wellpath, LLC and Jackie Blevins remain. The Court will permit Plaintiff to file a renewed motion for leave to amend with the proposed amended pleading attached as an exhibit. The motion shall include any necessary briefing to show that the amended pleading complies with Federal Rule of Civil Procedure 8(a) and *Twombly*, 550 U.S. 544, & *Iqbal*, 556 U.S. 662. The motion for leave to amend may be filed on or before September 19, 2019. No extensions shall be granted.

## VII.  Conclusion

Defendants' Motion to Dismiss, (D.E. 33), is **GRANTED**. All claims against Elizabeth Alvarado, Jasmine Drake, Michael Alvarez, Anthony Munoz, Jose Rodriguez, Luis Rivera, Jose Aguayo, and Chris Gomez are time-barred and **DISMISSED**. The claims

against Nueces County, Texas are **DISMISSED** for failure to state a claim. Defendant's first Motion to Dismiss, (D.E. 10), is **DENIED** as moot. Plaintiff may request leave to amend **on or before September 19, 2019**.

SIGNED and ORDERED this _____ day of September 2019.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE